IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERTO ANTONIO BLYE, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:25-cv-315 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Patricia L. Dodge |
| PENNSYLVANIA BOARD OF | ) | |
| PROBATION AND PAROLE and | ) | |
| WARDEN OF SCI HOUTZDALE, | ) | |
| | ) | |
| Respondents. | ) | |

**<u>MEMORANDUM</u>**

Pending before the Court[1] is the Petition for a Writ of Habeas Corpus (ECF 7) filed by state prisoner Roberto Antonio Blye ("Petitioner") challenging the decision by the Pennsylvania Board of Probation and Parole ("Board") to deny him parole. For the reasons set forth below, the Court will deny the Petition and deny a certificate of appealability.

## I.    Background

In 2005, Petitioner appeared before the Court of Common Pleas of Allegheny County and was sentenced to an aggregate term of 10 to 20 years of incarceration on convictions of robbery, burglary, rape and criminal conspiracy.[2] (Resp's Ex. 1, ECF 14-1 at 2-3.) Petitioner's minimum

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] Pennsylvania's statutory sentencing scheme is indeterminate, meaning that a court will impose a sentence with two numbers, which represent the minimum and maximum period of incarceration. The minimum term is the earliest date that the defendant will be eligible for discretionary parole release and the maximum term is the date on which the defendant may be released from confinement or parole supervision.

sentence date expired on July 11, 2015, and his maximum sentence was set to expire on July 15, 2025. (*Id.*)

The Board granted Petitioner parole in late 2019 and he was released to an approved home plan on March 4, 2020. (Resp's Ex. 6, ECF 14-16 a 2-5; Resp's Ex. 7, ECF 14-7 at 2-7.) While on parole, Petitioner committed other crimes and was convicted in 2023 on two counts of firearms violations and a count of receiving stolen property. As a result, on December 7, 2023, the Board recommitted Petitioner as a convicted parole violator and his maximum sentence date was recalculated and set at March 23, 2029. (Resp's Ex. 8, ECF 14-8 at 2-3.)

The Pennsylvania Department of Corrections now houses Petitioner at SCI Houtzdale, which is located within the territorial boundaries of this Court. Last year, the Board denied Petitioner parole. In its decision, which is dated July 31, 2025, the Board explained:

The reasons for the Board's decision include the following:

Your prior unsatisfactory supervision history.

Reports, evaluations and assessments/level of risk indicates your risk to the community.

Your minimization/denial of the nature and circumstances of the offense(s) committed.

Your refusal to accept responsibility for the offense(s) committed.

Your lack of remorse for the offense(s) committed.

The nature of your crime.

Your prior criminal history.

(Resp's Ex. 9, ECF 14-9 at 2-3.)[3]

---

[3] The Board advised Petitioner that he would be reviewed for parole again in or after July 2026. (Resp's Ex. 9, ECF 14-9 at 2.)

In his Petition for a Writ of Habeas Corpus (ECF 7), Petitioner claims that the Board's decision to deny him parole was arbitrary and capricious and conscious shocking for a variety of reason and thus violated his substantive due process rights. (*Id.*; *see also* Brief in Support Petition, ECF 8). As relief, Petitioner seeks an order from this Court directing that the Board parole him so that he can start to serve the sentence imposed on him for his 2023 convictions. Respondents filed their Answer (ECF 14) and Petitioner filed his Reply (also known as a Traverse) (ECF 18.)

## II.    Discussion

### A.    Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, which is the federal habeas statute applicable to prisoners in custody pursuant to a state-court judgment. It permits a federal court to grant a state prisoner the writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Petitioner's burden to prove that he is entitled to the writ. *Id.*; *see, e.g.*, *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

### B.    Petitioner Procedurally Defaulted His Claims

A federal habeas petitioner must complete the exhaustion of his *available* state court remedies before a district court may determine the merits of his habeas claims. Congress codified this requirement at 28 U.S.C. § 2254(b) and (c) for state prisoners, such as Petitioner, who are in custody pursuant to a state court judgment. Those provisions provide:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
>> (A)    the applicant has exhausted the remedies available in the courts of the State; or

(B)     (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

- - -

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Importantly, a petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" to satisfy the exhaustion requirement. *Id.* at 845.

Respondents contend that the Court should deny Petitioner's substantive due process claims because he could have raised them in a petition for a writ of mandamus filed in the Commonwealth Court of Pennsylvania's original jurisdiction but failed to do so. Petitioner counters that he is excused from the exhaustion requirement under *DeFoy v. McCullough*, 393 F.3d 439 (3d Cir. 2005).

In *DeFoy*, the Court of Appeals was examining the state of Pennsylvania law *at the time it issued its decision in 2005* to determine if the petitioner in its case, who claimed the Board violated his Fifth Amendment right against coerced self-incrimination, had an available state court remedy in which to exhaust his claim. The Court of Appeals held that, aside from litigating an *ex post facto* claim, Pennsylvania law did not provide a mechanism by which a prisoner could challenge a parole denial. *Id.* at 445. Thus, it held that a Pennsylvania prisoner who is challenging the denial of parole

is exempt from the exhaustion requirement with respect to all other types of constitutional claims. *Id.*

The law in Pennsylvania has been clarified in the more than two decades since *DeFoy* was decided in January 2005, however. In September 2021, in *Toland v. Pennsylvania Bd. of Probation and Parole*, 263 A.3d 1220 (Pa. Commw. Ct. 2021), the Commonwealth Court of Pennsylvania held that a prisoner could litigate substantive due process challenges in a mandamus action challenging the Board's decision denying parole. *Toland*, 263 A.3d at 1233 ("under our precedent, both ex post facto claims *and due process challenges* may be raised in a mandamus action.") (emphasis added); *see, e.g.*, *Harley v. Pennsylvania Parole Bd.*, 2025 WL 1873016, at *2 (E.D. Pa. July 7, 2025) ("Several other district courts within the Third Circuit have acknowledged that because of the expanded scope of state court review, *DeFoy* may no longer control on the issue of exhaustion. I agree with these courts, and view *Toland* as undercutting the factual predicate on which *DeFoy* was decided. It follows that a petitioner must raise due process challenges to parole board decisions in state court before petitioning for federal habeas relief."); *Bowman v. Brittan*, 2024 WL 5050028, at *1 n.2 (E.D. Pa. Oct. 21, 2024) ("Based upon *Toland*, which *DeFoy* could not consider since it had yet been decided, it is clear that Petitioner had an available state court remedy; hence, he was required to comply with the exhaustion requirement."), report and recommendation adopted sub nom. *Bowman v. Att'y Gen.*, 2024 WL 5047464 (E.D. Pa. Dec. 9, 2024); *Purcell v. Pennsylvania Parole Bd.*, 3:23-cv-311, 2024 WL 5340671, at *2 (W.D. Pa. Jan. 10, 2024) ("there is no continuing viability to the argument accepted by the panel in *DeFoy* that there are no state court remedies available in Pennsylvania to a petitioner" challenging the Board's decision on substantive due process grounds; and, explaining why district courts do not

have to wait for the Court of Appeals to issue a formal overruling of *DeFoy*), report and recommendation, 2025 WL 240959 (W.D. Pa. Jan. 17, 2025).

Thus, Respondents have established that Petitioner had a firmly established state court remedy available to him to challenge the Board's decision to deny him parole on substantive due process grounds. He could have filed a mandamus petition in the Commonwealth Court's original jurisdiction and then, if he was unsuccessful there, pursued an appeal in the Pennsylvania Supreme Court. *See, e.g.*, *Harley*, 2025 WL 1873016, at *3 ("In light of *Toland*, Petitioner was required to first contest his parole denial in the Commonwealth Court, and from there pursue any subsequent appeals in the Pennsylvania Supreme Court prior to seeking review from this Court. *See* 42 Pa. C.S. § 723.")[4]

The time for Petitioner to file a mandamus action challenging the Board's July 31, 2025 decision expired long ago. *See* Pa. R.A.P. 1512(a). Accordingly, Petitioner has procedurally defaulted his claims. Like the exhaustion doctrine, the doctrine of procedural default "is grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730, and it provides that a federal habeas claim may not be addressed by the federal habeas court where, as is the case here, the petitioner failed to present it to the state court and the state court would now decline to address it

---

[4] Although some district courts deciding similar claims avoid the exhaustion issue and simply deny the petitioner's due process challenge under de novo review, the better course is to recognize that *DeFoy* is distinguishable and does not govern current habeas cases. Recognizing this is important because to hold otherwise allows petitioners to avoid litigating their substantive due process claims in state court through the process that *Toland* makes clear is available to them. That in turn then allows petitioners to avoid two significant provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") that would otherwise govern the Court's review of their substantive due process claims. Those provisions are: (1) AEDPA's prohibition on evidentiary development when a petitioner failed to develop the evidentiary basis of the claim in a state court proceeding, 28 U.S.C. § 2254(e)(2); and (2) AEDPA's deferential standards of review, which a federal court must apply to a state court's findings of facts and its adjudication of the merits of a petitioner's federal constitutional claim, 28 U.S.C. § 2254(d) & (e)(1).

on the merits because state procedural rules bar such consideration. *See, e.g.*, *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000); *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). There are no grounds on the record to excuse Petitioner's default.

Thus, the Court will deny all of Petitioner's claims because he procedurally defaulted them.

**C.      Petitioner's claims also lack merit**

Alternatively, the Court can also deny Petitioner's substantive due process claims on the merits. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

Petitioner has no right to parole under state law. *See, e.g.*, *Hudson v. Pennsylvania Bd. of Prob. and Parole*, 204 A.3d 392, 395 (Pa. 2019). Whether to grant him parole is a decision left to the sole discretion of the Board. 61 Pa. Cons. Stat. §§ 6135, 6137; *see, e.g.*, *Homa v. Pennsylvania Bd. of Prob. and Parole*, 192 A.3d 329, 334 (Pa. Commw. Ct. 2018). Nevertheless, the Fourteenth Amendment's Due Process Clause "contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010) (internal quotation and citations omitted); *see also Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980) ("Even if a state statute does not give rise to a liberty interest in parole release…, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons.").

"Conduct can violate substantive due process if it shocks the conscience, which encompasses only the most egregious official conduct." *Id.* (internal quotations and citations omitted); *see also Hunterson v. DiSabato*, 308 F.3d 236, 248 (3d Cir. 2002) ("when an executive

action is at issue, only the most egregious conduct will be considered arbitrary in the constitutional sense."). "As a general matter, it is governmental conduct intended to injure that is most likely to rise to the conscience-shocking level." *Evans v. Sec'y Pennsylvania Dept. of Corr.*, 645 F.3d 650, 660 (3d Cir. 2011) (internal citations and quotations omitted).

The Court of Appeals has explained that it would be arbitrary and capricious for the Board to base its decision on a reason that has no "rational relationship to the purpose of parole[,]" such as the "color of one's eyes, the school one attended, or the style of one's clothing." *Block*, 631 F.2d at 236 n.2. It has further held that it "would violate due process if [a parole board] bases a decision on constitutionally impermissible criteria such as race, religion, or the exercise of free speech rights." *Id.* at 237; *see also Newman*, 617 F.3d at 784.

Petitioner has not met his burden of proving that the Board's July 31, 2025, decision denying him parole was arbitrary. In exercising its discretion whether to grant him parole, the Board had to consider a number of factors, including Petitioner's general character and background. 61 Pa. Cons. Stat. § 6135(a). Although Petitioner disagrees with the Board's assessment of him and believes the reasons it gave for denying him parole lack support, he has not shown that the Board relied on anything that can be described as "conscience shocking." The Court is not evaluating whether the Board made the correct decision. The Court is "not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if [the Board had] some basis for [its] challenged decision." *Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001). Accordingly, there can be no finding that Petitioner is in custody in violation of his substantive due process rights.

**D.    Conclusion**

Based on the above, the Court will deny the Petition. Because jurists of reason would not find the Court's conclusion debatable or wrong, it will deny a certificate of appealability.[5]

An appropriate Order follows.


Date: March 31 , 2026

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge

---

[5] A state prisoner may not appeal a district court's order denying habeas relief "unless a circuit justice or judge issues a certificate of appealability[.]" 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying those standards here, jurists of reason would not find it debatable whether Petitioner's substantive due process claims should be denied for the reasons given herein.